**Opinion issued January 9, 2024**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-22-00086-CV

———————————

**ARMSTEAD SCALES, Appellant**

**V.**

**MICHAEL WHITING, KRISTOPHER J. WHITING, CHRISTOL P. DANIEL, SHEA WHITING, SR., SHIVERS WHITING, IV, KIRSTINA SCALES, SANDRA TAPSCOTT, TAMMIE MINDO, JAKE DAVIS, DAISY SCALES, ZOLLIE SCALES, IV, JASON LAMONT SCALES, MELLANIE SCALES, ANNIE SCALES, VICTOR SCALES, SR., LOU ELLA SCALES, BILLY SCALES, ROYLINDA F. SCALES, AND CASSANDRA Y. SCALES, INDIVIDUALLY AND AS INDEPENDENT EXECUTOR OF THE ESTATE OF ALTHEA SCALES, Appellees**

---

**On Appeal from the 21st District Court**
**Washington County, Texas**
**Trial Court Case No. 34512**

---

## MEMORANDUM OPINION

This appeal arises from the partition of 276 acres in Washington County. Armstead Scales appeals from the trial court's order confirming the sale of certain tracts to others that he maintains he was entitled to buy under the partition order.

We affirm the trial court's judgment.

## BACKGROUND

This partition action was filed in 2010. In February 2021, the trial court entered a partition order finding that the surface estates of five designated tracts of land are not susceptible to partition in kind between the parties, who all have an ownership interest in these tracts. The trial court identified the tracts as follows:

| Tract | Total Acreage |
|-------|---------------|
| 1 | 43.75 |
| 2 | 30.00 |
| 3 | 40.00 |
| 4 | 31.00 |
| 5 | 58.00 |

As they are not susceptible to partition, the trial court appointed a receiver to sell the surface estates of these five tracts, subject to any party's right to buy out the other parties' interests in a portion of the tracts. To initiate a buyout, the order required a party to give written notice to the court and receiver within 45 days of the entry of the partition order. Any such notice was required to specify in detail which portion the party intended to buy so that the receiver could definitively identify it.

Armstead Scales filed a notice designating four portions of the surface estates he wished to buy from the other parties. He designated the following acreage:

| Tract | Total Acreage | Armstead's Designation |
|---|---|---|
| 1 | 43.75 | 43.75 |
| 2 | 30.00 | 10.00 |
| 3 | 40.00 | 18.00 |
| 5 | 58.00 | 10.50 |

Each designation was accompanied by some description of the portions designated.

After the 45-day deadline to designate had expired, Armstead amended his Tract 1 designation from the entire tract to just 26 acres of the 43.75 total. But Armstead remained willing to buy the entire 43.75 acres if he could not amend.

The trial court held multiple hearings after Armstead filed his designations. At the last of these hearings, in January 2022, the receiver testified. In general, the receiver indicated that in the months following Armstead's designations, she worked via e-mail, telephone, and meeting to ascertain the exact portions of land that Armstead wished to buy, thus indicating that at least some of his designations did not allow her to definitively identify them based on the designation alone. In particular, the receiver testified that three of Armstead's designations were unclear.

First, the receiver said that Armstead's Tract 3 designation—which consisted of 18 of the 40 acres comprising Tract 3—was initially unclear because the portion of the tract he designated was split by Farm to Market Road 1155. But the receiver testified that at some later point in time she came to understand this designation.

Second, the receiver said that Armstead's Tract 1 designation—which consisted of 43.75 of the 43.75 acres comprising Tract 1—was unclear. But she conceded that her actual concern was not lack of clarity but rather how adjoining properties could be accessed if Armstead was allowed to designate the entirety of Tract 1. (Tract 1 is one of three u-shaped tracts totaling about 144 acres that are jointly known as "the Hoot Owl property" because this property is accessible solely via Hoot Owl Lane, which only interfaces with the 43.75 acres making up Tract 1.)

Third, the receiver said that Armstead's Tract 2 designation—which consisted of 10 of the 30 acres comprising Tract 2—was initially unclear. But the hearing does not include an explanation as to why she thought this designation was unclear.

At the hearing's conclusion, the trial court ruled from the bench. Based on its interpretation of the February 2021 partition order, the trial court ruled as follows:

> [T]he property is defined as five tracts of land. Then a party is entitled to make a designation on an election to buy a specific portion of property. The Court is of the opinion you're entitled to a specific portion, not a hodgepodge or multiple portions. Therefore, the Court will state that the only proper designation of property was the 18-acre tract in the JP Cole Survey A34. All other designations are improper.

That same day, in January 2022, the trial court signed an order in which it again ruled that only Armstead's 18-acre designation from Tract 3 was valid. But the trial court's order stated a different rationale for its ruling than the one the trial court stated from the bench; specifically, the order stated that, unlike the 18-acre designation from Tract 3, Armstead's other three designations were "not properly

4

made on or before 45 days after the [February 2021 partition order] was entered." The trial court also approved the sale of two properties by the receiver to a third party. These two properties include portions of land that Armstead tried to designate—specifically the 43.75 acres from Tract 1 and 10 acres from Tract 2.

Later, in July 2022, the trial court entered a final judgment, in which it restated that, unlike Armstead's 18-acre designation from Tract 3, his other three designations were "not properly made on or before 45 days after the [February 2021 partition order] was entered" and thus disallowed them. In this final judgment, the trial court also directed the receiver to take possession of the property subject to suit and remove all occupants from it, apart from livestock allowed by agreement.

Armstead appealed. After filing his brief, however, Armstead passed away.

## DISCUSSION

### Effect of Armstead's Death

When, as here, a party "dies after the trial court renders judgment but before the case has been finally disposed of on appeal, the appeal may be perfected, and the appellate court will proceed to adjudicate the appeal as if all parties were alive." TEX. R. APP. P. 7.1(a)(1); *see also Gunn v. McCoy*, 554 S.W.3d 645, 678–79 (Tex. 2018) (issuing judgment as if plaintiff who died on appeal remained living). Any substitution of parties that may be necessary is an issue to be addressed by the trial

5

court. *See* TEX. R. CIV. P. 151–52 (providing for heirs or estate representative to appear in suit after plaintiff's death or estate representative on defendant's death).

**Appellate Issues Presented**

## I. Issue 1: Armstead contends the trial court erred in ruling that he could only make one designation, not several, from the five tracts subject to sale.

Armstead argues that the trial court erred in disallowing three of his four designations based on an erroneous interpretation of the partition order. As a matter of law, he maintains, the partition order did not limit him to a single designation.

Armstead's argument is premised on the trial court's ruling from the bench at the conclusion of the January 2022 hearing. However, the trial court stated a different rationale in its written order entered the same day and in its later final judgment. When, as here, there is a conflict between the trial court's oral pronouncement and its written order or judgment, the written order or judgment prevails. *E.g.*, *Fort Bend Cent. Appraisal Dist. v. Am. Furniture Warehouse Co.*, 630 S.W.3d 530, 537 n.1 (Tex. App.—Houston [1st Dist.] 2021, no pet.); *Cap. Fin. & Commerce v. Sinopec Overseas Oil & Gas*, 260 S.W.3d 67, 84 n.21 (Tex. App.—Houston [1st Dist.] 2008, no pet.). Consequently, Armstead does not address the actual basis for the ruling.

Nor does Armstead challenge in the alternative the ruling the trial court actually did make, which was that he failed to properly designate the portions of property that he desired to buy by the deadline stated in the court's prior partition order. As Armstead did not raise this issue, it is not before us on appeal. *See* TEX. R.

6

APP. P. 38.1(f) (requiring appellant to identify issues presented for decision in brief); *see, e.g.*, *Pelco Constr. Co. v. Chambers Cty.*, 495 S.W.3d 514, 521 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (confining review to issues raised by party on appeal because appellate court cannot reverse judgment based on unraised issues). And when a party does not challenge an independent ground that fully supports the trial court's order or judgment, the party cannot prevail on appeal. *D & M Mar. v. Turner*, 409 S.W.3d 693, 697 (Tex. App.—Houston [1st Dist.] 2013, pet. denied).

## II. Issue 2: Armstead contends the trial court erred in ordering the receiver to remove all occupants from the property that is subject to this lawsuit.

The record establishes without contradiction that the sole persons who occupy portions of the property at issue are Carlos Green and Gloria Lofton, neither of whom are parties. Neither Armstead nor his lawyer purport to represent these nonparties, and Armstead does not contend that the trial court's removal order affects him. Because a judgment modifying or reversing this aspect of the trial court's judgment would not affect Armstead or vindicate any right he possesses, he lacks standing to raise this issue on appeal. *See Nephrology Leaders & Assocs. v. Am. Renal Assocs.*, 573 S.W.3d 912, 914 (Tex. App.—Houston [1st Dist.] 2019, no pet.) (stating appellant must have standing to appeal trial court's judgment and cannot complain of errors that do not injuriously affect him or merely affect another's rights).

## CONCLUSION

We affirm the trial court's judgment.

Gordon Goodman
Justice

Panel consists of Justices Goodman, Countiss, and Farris.